State v. Barnes

STATE OF NORTH CAROLINA v. CLARA VIRGINIA BARNES

No. 758SC140

(Filed 21 May 1975)

1. **Criminal Law § 122— requiring jury to deliberate further — no coerced verdict**

    The trial court in a homicide case did not coerce a verdict when the jury on two occasions returned to the courtroom and indicated that it could not agree on a verdict, on the first occasion the judge excused the jurors for lunch and told them to return at two o'clock and continue their deliberations, on the second occasion the court determined the numerical division to be 10-2 and requested the jury to deliberate a while longer, and the jury returned the verdict thirty minutes later.

2. **Criminal Law § 122— requiring jury to deliberate further — no instruction not to surrender convictions**

    The trial court did not err in directing the jury to continue to deliberate without instructing that no juror should surrender his convictions in order to agree on a verdict where the court simply and without comment directed the jury to continue deliberations.

3. **Criminal Law § 126— verdict — guilty of manslaughter with request for mercy**

    The trial court did not err in accepting a verdict that the jurors "find the Defendant guilty of voluntary manslaughter and request mercy" since the request for mercy was not part of the verdict and there was nothing to suggest that any juror conditioned his assent thereto upon the judge's acceptance of the request for mercy or that any juror had any doubt as to the guilt of the accused.

ON *certiorari* to review trial before *Rouse, Judge*. Judgment entered 18 October 1974 in Superior Court, WAYNE County. Heard in the Court of Appeals 15 April 1975.

Defendant was indicted for murdering her husband. Upon the call of the case the solicitor announced that the State would not seek a verdict of guilty of murder in the first degree but would ask for a verdict of guilty of murder in the second degree or such lesser degree of homicide as the evidence would justify.

The State and defendant stipulated that the deceased died as a result of a stab wound in the neck. Evidence for the State tended to show the following: On 6 August 1974, Wilbur Thomas Kilpatrick, Chief of Police for the Town of Fremont, who knew both defendant and victim, found the victim behind a house on Washington Street. He was dead. There were three knife wounds, one at the base of the head and two in the back of the

left shoulder just below the shoulder blade. There was a trail of blood from the body almost to the corner of Washington and Vance Streets. Queenie Austin, mother of defendant, lives on Vance Street.

Chief Kilpatrick later found defendant at the home of Absolam Bryant and informed her that she was under arrest. He then proceeded to take defendant to the Magistrate's Office in Goldsboro. He read defendant her "rights." Chief Kilpatrick asked defendant for the knife. Defendant told him that she had thrown it away. Defendant further remarked:

"I was tired of him following me all day . . . If he called anyone to get my children I would kill him. . . I got the ups on him and I pulled the knife out of my pants and I went to work on him. . . I hope he's dead and in hell."

Defendant first told the police chief that she bought the knife but later said she found the knife beside the street.

Defendant offered evidence of a history of violent assaults and other abuse of defendant by her deceased husband. Defendant admitted that she had cut him before. Shortly before the day of the killing defendant and her children had moved into the home of defendant's mother as a result of being chased from their own house by deceased.

According to defendant's evidence, the victim came to the home of defendant's mother, and defendant came out on the porch to talk with him. The victim began hitting defendant on the head and reached back to pick up a bottle. At this point, defendant struck him with a knife she had just picked up. He walked away, and defendant did not know that she had killed him or even hurt him. Defendant observed no blood on him.

In the State's rebuttal evidence, Leroy Evans of the Fremont Police Department testified that defendant told him that she and her husband were involved in a family argument and that she was going to get even with him. He followed her across town to her mother's house where she got the knife and stabbed him. She said she just got the "ups" on him and went to work on him. She said nothing about deceased's having attacked her at the time she stabbed him. Defendant did not appear upset and had no apparent bruises about the face or other signs of having been beaten.

The jury returned a verdict of guilty of voluntary manslaughter and defendant was sentenced to prison for not less than eight nor more than ten years.

*Attorney General Edmisten, by Associate Attorney Wilton E. Ragland, Jr., for the State.*

*R. Michael Bruce, for defendant appellant.*

VAUGHN, Judge.

The case was clearly one for the jury, and defendant's argument to the contrary is without merit.

Defendant contends that the court failed to define the amount of proof necessary to satisfy the jury that she acted in self-defense. A reading of the charge discloses that the instructions on the burden of proof required of the respective parties were entirely proper. In all material respects the instructions given in this case were identical to those approved in numerous decisions of the Supreme Court.

[1] On two occasions the jury returned to the courtroom and one of the jurors indicated that the jury would not be able to agree on a verdict. On the first occasion the judge made no comment except to excuse the jury for lunch and tell them to come back at two o'clock and continue their deliberation. On the other occasion the judge inquired as to the numerical division. A juror replied, "10-2." The judge's only comment was "Ladies and gentlemen, I'm going to ask you to retire and consider your verdict for a while longer." Thirty minutes later the jury returned the verdict.

Defendant argues that requesting the jury to continue to deliberate after the foregoing tended to coerce them into a verdict. The argument is without merit. The jury deliberated for a total time of less than four hours which is certainly not an unusual length of time when the gravity of the offense and the conflicting inferences arising from the evidence are considered.

[2] Defendant also contends that the court erred in directing the jury to continue to deliberate without telling the jury that no juror should surrender his convictions in order to agree to a verdict. The failure to give an instruction to that effect was the cause of a new trial in *State v. McKissick*, 268 N.C. 411, 150 S.E. 2d 767. Here, however, unlike *McKissick*, the court did not

urge the jury to reach a verdict, give additional instructions on the responsibilities of jurors or suggest the consequences of their failure to agree. He simply and without comment allowed them to continue to deliberate. In this there was no error.

[3] Although he did not raise the issue at trial, defendant now contends the judge should not have accepted the verdict because "the jury had a misapprehension about the effect of the verdict it rendered." We disagree.

The jury returned its verdict, as follows:

"CLERK: How find you the Defendant, CLARA VIRGINIA BARNES, guilty of second degree murder, or guilty of voluntary manslaughter or not guilty?

JUROR: We find the Defendant guilty of voluntary manslaughter and request mercy."

The jury was polled and each juror was asked the following question:

"CLERK: You have returned a verdict of guilty to voluntary manslaughter, is this your verdict and do you still assent thereto?"

Each juror answered yes. One juror added, "Yes, with mercy."

The verdict was guilty. The guilty verdict was unequivocal. The return of that verdict ended the jury's role in the proceedings. The recommendation of mercy is no part of the verdict. The question of punishment is for the judge. There is nothing to suggest that any juror conditioned his assent to the verdict upon the judge's acceptance of the recommendation of mercy or, that by making the request, any juror had any doubt about the guilt of the accused.

We find no prejudicial error in the trial and judgment from which defendant appealed.

No error.

Judges MORRIS and CLARK concur.